IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FOSTER GLASS,                                          Civ. No. 1:18-cv-01859-MC

                        Plaintiff,         **OPINION & ORDER**

           v.

SHARON FORSTER; LAKE COUNTY;
TOWN OF LAKEVIEW; MICHAEL
TAYLOR; DOES 1 THROUGH 5,

                      Defendants.
_____

McSHANE, District Judge.

      Plaintiff Foster Glass brings this civil rights action against Defendants Lake County, the Town of Lakeview, Lake County Sheriff Michael Taylor, and Does 1 through 5, who are alleged to be "sworn law enforcement officers with either the Lakeview Police Department or the Lake County Sheriff's Office." First Am. Compl. ("FAC") ¶ 10. This matter comes before the Court on a Motion for Summary Judgment filed by Defendants Lake County, the Town of Lakeview, and Sheriff Taylor, ECF No. 20, and a Motion for Leave to Amend the Complaint filed by Plaintiff, ECF No. 24. The Court has determined that these motions are appropriate for resolution without oral argument. LR 7-1(d)(1).

      Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Motion to Amend the Complaint is DENIED as futile.

## LEGAL STANDARD

      Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute

as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

In 2016, Lake County held an election for district attorney. Sharon Forster was the only named candidate on the ballot for the district attorney race, although Plaintiff Foster Glass, a resident of Deschutes County, ran a write-in campaign for the same position.

On October 19, 2016, the American Association of University Women held a candidate forum at the Lake County Senior Center in Lakeview, Oregon. Franz Decl. Ex. 101. ECF No. 21. Lakeview Police Officer Matt Gray and his trainee, Officer Mike Patterson, were present at the forum and on duty. Franz Decl. Ex. 108, at 6. Patterson testified that he, Gray, and a third officer, Dave Systma, had been ordered to attend the forum by the Lakeview Chief of Police to represent the police department. *Id.* Lake County Sheriff Michael Taylor, Undersheriff Paul Havel, and

Deputy Sheriff Daniel Tague were also present at the forum.  Franz Decl. Ex. 109, at 3-4.  Taylor and Havel had just come off duty and were still wearing their uniforms.  Wolf Decl. Ex B, at 4.  ECF No. 23.  Tague was in uniform and on duty.  *Id.*   Taylor testified that had not ordered any members of the Lake County Sheriff's Office to attend the forum, but they chose to attend because of their interest in the district attorney and county commissioner elections.  Franz Decl. Ex. 109, at 5-6.  Taylor testified that he had no personal knowledge concerning the reasons for the presence of the Lakeview police officers at the forum.  Wolf Decl. Ex. B, at 4.

Audience members at the candidate forum were not permitted to speak and were instead invited to submit written questions during the intermission, which the candidates would then answer.  Franz Decl. Ex. 104.  Forster was one of the candidates scheduled to speak at the forum.  Glass attended the forum, although he was not scheduled to speak.  Franz Decl. Ex. 103, at 6.  Glass was told ahead of time that he would not be permitted to speak but decided to attend the forum "just in case I could speak."  *Id.* at 7-8.

When Glass arrived at the forum, he was told that he would not be permitted to speak and decided to leave.  Franz Decl. Ex. 103, at 7-8.  After leaving, Glass continued to listen to the forum on the radio.  *Id.* at 7.  In his deposition, Glass testified that he "heard her [Forster] get on the radio and start making some statements that I thought were untrue, and I thought, no, I better go back there."  *Id.*  Glass then returned and reentered the forum.  *Id.*

At this point, the forum had reached the question-and-answer section.  One of the questions submitted for Forster referenced the fact that Glass had previously been disciplined by the Oregon State Bar and asked Forster if she had ever been disciplined by the Bar.  Franz Decl. Ex. 105.  In the course of answering the question, Forster discussed Glass's history of Bar discipline.  *Id.*

Glass loudly objected to Forster's remarks as untrue.  Franz Decl. Ex. 105.  Glass testified that he was aware that he was not permitted to speak but Glass felt he had "a right to correct somebody."  Franz Decl. Ex. 103 at 10.  The forum moderator responded by asking Glass to sit down.  Franz Decl. Ex. 105.  Glass continued to speak.  Franz Decl. Ex. 108, at 10; Ex. 105.  Officers Gray and Patterson approached Glass and asked him to come outside with them.  *Id.* at 11.  Patterson took Glass by his right arm, while Gray took Glass's left arm and they led Glass out of the building.  *Id.* at 13.  Deputy Tague followed and activated his body camera.  Franz Decl. Ex. 110, at 7.

Taylor testified that the officers did not grab, lift, or drag Glass.  Franz Decl. Ex. 109, at 8.  Taylor testified that they touched Glass on the arms in an "escort touch," and walked him outside.  *Id.*  Taylor testified that Glass was compliant with the officers and so he did not follow them outside.  *Id.* at 7.

Once outside, the officers released Glass.  Franz Decl. Ex. 108, at 13.  The officers asked Glass if he was intoxicated, which he denied.  Franz Decl. Ex. 102.  Glass told the officers that he had been a prosecutor.  *Id.*  Glass called the officers "Gestapo pigs," and told them that if they weren't in uniform he could "kick the shit out of them."  *Id.*  The officers laughed at this remark and told Glass to "move along."  *Id.*  Glass then departed.  Franz Decl. Ex. 108, at 17.

Patterson testified at his deposition that he did not know Glass was running for office and believed that Glass intended to disrupt the forum.  Franz Decl. Ex. 108, at 12, 14.  Patterson believed that he could have arrested Glass for Disorderly Conduct.  *Id.* at 14.  Patterson testified that he would not have handled the situation differently if he had known Glass was a candidate.  *Id.* at 13.

## DISCUSSION

### I.    Defendants' Motion for Summary Judgment

Glass brings claims alleging (1) a violation of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983 and (2) a conspiracy between Forster and the Doe Defendants to violate Glass's First and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1985.[1]  Defendants have moved for summary judgment at to Glass's claim under § 1983.[2]

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

In this case, Glass has divided his claim under § 1983 into five counts alleging (1) that Taylor and the Doe Defendants unreasonably seized Glass in violation of the Fourth Amendment when they removed him from the candidate forum; (2) that Taylor and the Doe Defendants used excessive force in violation of the Fourth Amendment when they removed him from the forum; (3) that Forster, Taylor, and the Doe Defendants deprived Glass of his First Amendment rights when they prevented him from speaking at the candidate forum; (4) that Forster and the Doe Defendants retaliated against Glass due to police support for Forster in the district attorney race;

---

[1] A third claim based on Oregon state law was alleged against Sharon Forster.  Forster is also named as a defendant in several counts of Glass's claims under § 1983, as well as Glass's § 1985 claim.  Glass has voluntarily dismissed all claims against Forster.  ECF No. 14.

[2] Glass's claim under § 1985 is alleged against Forster and the Doe Defendants.  FAC ¶¶ 78-79.  The named Defendants have not, therefore, moved for summary judgment as to Glass's claim under § 1985.

and (5) a claim for municipal liability against Lake County and the Town of Lakeview under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

As to Taylor, who is the only named individual Defendant, the FAC alleges that he is liable because "as Sheriff of Lake County, he was the supervisor of at least one Doe defendant, and failed to intervene," to stop the alleged violations.  FAC ¶¶ 50, 61, 66, 71.  Court 4, which alleges First Amendment retaliation, is only expressly alleged against Forster and the Doe Defendants, but includes an allegation concerning Taylor's supervisory liability.  *Id.* at ¶ 71.

## A. First Amendment Claims

### 1. Denial of Speech

Glass contends Defendants violated his First Amendment right to free speech when he was prevented from speaking at the candidate forum.  The First Amendment protects an individual's right "to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances."  *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).  This protection is not absolute and "[e]ven protected speech is not equally permissible in all places and at all times."  *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985).  "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."  *Id.* at 799-800.

"The Supreme Court has identified a three-pronged test for beginning the evaluation of a claim of unconstitutional restriction on speech: (1) whether the First Amendment protects the plaintiff's speech; (2) the nature of the forum; and (3) whether the justifications offered for limiting

or excluding speech from the forum satisfy the requisite standards." *Walsh v. Enge*, 154 F. Supp.3d 1113, 1126 (D. Or. 2015) (citing *Cornelius*, 473 U.S. at 797).

In this case, Defendants do not appear to challenge the allegation that Glass's speech, which concerned his disciplinary history during an election in which he was a candidate, was protected by the First Amendment. The Court therefore turns to the nature of the forum and the justification for Glass's removal.

### a. The Forum

"The extent to which the government may regulate speech depends on the nature of the forum where the speech takes place." *Walsh*, 154 F. Supp.3d at 1127. "The Supreme Court has classified forums into three categories: traditional public forums, designated public forums, and limited public forums." *Seattle Mideast Awareness Campaign v. King Cnty.("SeaMAC")*, 781 F.3d 489, 496 (9th Cir. 2015). Traditional public forums are places "which by long tradition or by government fiat have been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983). These include streets and parks, which have "immemorially" been "used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* (internal quotation marks and citation omitted).

Designated public forums are "properties that are not traditionally open for public speech, but the government has made them generally available for expressive use by the general public or by a particular class of speakers." *Koala v. Khosla*, 931 F.3d 887, 900 (9th Cir. 2019) (internal quotation marks and citation omitted). Examples include "university meeting facilities, school board meetings, and municipal theaters." *Id.*

"The principal difference between traditional and designated public forums is that the government may close a designated public forum whenever it chooses, but it may not close a

traditional public forum to expressive activity altogether." *SeaMAC*, 781 F.3d at 496. In both a traditional and a designated public forum, "the government may impose reasonable time, place, and manner restrictions on speech, but content-based restrictions must be viewpoint neutral and satisfy strict scrutiny review." *Koala*, 931 F.3d at 900.

"[W]hen the government intends to grant only 'selective access,' by imposing either speaker-based or subject-matter limitations, it has created a limited public forum." *SeaMAC*, 781 F.3d at 497 (citation omitted); *Koala*, 931 F.3d at 900 ("The classic example of a limited public forum is government property characterized by selective access based on the speaker or subject matter."). In limited public forums, "the government may regulate speech so long as the restriction is reasonable and viewpoint neutral." *Koala*, 931 F.3d at 900.

In this case, the rules of the candidate forum permitted only a limited number of specific people to speak. Audience participation was limited to submitting written questions, which the speakers would then be given the opportunity to answer. This amounts to selective access based on the speaker and so the Court concludes that the candidate forum was a limited public forum.

**b. Restrictions on Speech**

As noted, the government may restrict speech within a limited public forum. "A restriction on protected speech must be reasonable in light of the purpose served by the forum." *Walsh*, 154 F. Supp.3d at 1129 (internal quotation marks and citation omitted). "In addition to time, place and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Reza v. Pearce*, 806 F.3d 497, 503 (9th Cir. 2015) (internal quotation marks and citation omitted).

The government is, for example, permitted to impose restrictions "to maintain decorum and order in a proceeding." *Reza*, 806 F.3d at 504. Courts have held that in a limited public forum it is reasonable for a government to "immediately exclude a disruptive individual from a meeting for the duration of that meeting." *Walsh*, 154 F. Supp.3d at 1128; *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990).

In *Walsh v. Enge*, 154 F. Supp.3d 1113 (D. Or. 2015), the court considered "whether the First Amendment allows a Mayor or his or her designee, acting pursuant to a city ordinance, to exclude a person, potentially indefinitely, from attending future City Council meetings to which the public is otherwise invited to attend and present their opinions simply because the person has been disruptive at previous meetings." *Id.* at 1118. The court concluded that the prospective exclusion was unreasonable, *Id.* at 1133-34, but noted that the city "undeniably . . . had authority to exclude Walsh on the day of his disruption." *Id.* at 1129.

In this case, Glass was escorted out of the building after interrupting one of the candidate forum speakers. He was not prospectively forbidden from participating in future events, nor was he banned from the Senior Center. As discussed above, governments are permitted to immediately exclude disruptive individuals from limited public forums. On this record, the Court concludes that Glass's First Amendment rights were not violated when he was removed from the candidate forum when he became disruptive.

### 2.  First Amendment Retaliation

Glass's claim for First Amendment retaliation alleges that his removal from the candidate forum was intended to chill his speech in an effort to aid Forster's campaign. "The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). "To establish a First Amendment

retaliation claim, a non-prisoner, non-government employee private citizen plaintiff must show that (1) he or she engaged in constitutionally protected speech; (2) the defendants' actions 'would chill a person of ordinary firmness from continuing to engage in the protected activity'; and (3) the protected activity was a substantial or motivating factor in the defendants' conduct." *Knotts v. Oregon Trail Sch. Dist. 46*, No. 3:15-cv-02296-AC, 2017 WL 4861521, at *2 (D. Or. Oct. 26, 2017) (quoting *Pinard v. Clatskanie Sch. Dist.6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

"[D]e minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." *Blair*, 608 F.3d at 544. "Rather, for adverse, retaliatory action to offend the First Amendment, they must be of a nature that would stifle someone from speaking out." *Id.* "For example, the government may chill speech by threatening or causing pecuniary harm; withholding a license, right, or benefit; prohibiting the solicitation of charitable donations; detaining or intercepting mail; or conducting covert surveillance of church services." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) (internal citations omitted). "Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective," and asks whether the retaliatory acts would lead an ordinary person in the plaintiff's position to refrain from protected speech. *Id.*

In this case, the only adverse act taken against Glass was his removal from the candidate forum following his interruption. Once outside, the officers allowed Glass to leave. He was not arrested, charged, or threatened by the officers. As the Ninth Circuit noted in *Blair*, this sort of de minimis infringement cannot sustain a claim for retaliation under the First Amendment. Additionally, there is no evidence of a retaliatory motive. Glass alleges that his removal was meant to stifle his challenge to Forster in the district attorney race, but Patterson testified that he did not

know that Glass was a candidate and that he would not have handled the situation differently if he had known. Franz Decl. Ex. 108, at 12-13.

On this record, the Court concludes Defendants are entitled to summary judgment on Glass's First Amendment retaliation claim.

### B. Fourth Amendment Claims

Glass contends that his person was unreasonably seized when the officers removed him from the candidate forum and that the officers used excessive force in removing him.

#### 1. Unreasonable Seizure

To state a claim for unreasonable seizure, a plaintiff must show that the person seizing the plaintiff acted intentionally and that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, 599 (1989); *Freitag v. American Airlines, Inc.*, No. 3:17-cv-00865-HZ, 2018 WL 3340873, at *7 (D. Or. July 6, 2018). A warrantless arrest supported by probable cause is reasonable under the Fourth Amendment. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. Probable cause does not require law enforcement officers to support their seizure with "certainty or even a preponderance of the evidence," but officers must be able to conclude that there is a "fair probability" that the defendant committed a crime. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). The issue of probable cause is a matter for the court, not the jury. *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003).

In this case, Patterson testified that he could have arrested Glass for Disorderly Conduct under ORS 166.025. Franz Decl. Ex. 108, at 14. In relevant part, ORS 166.025 provides that:

> (1) A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:
>
>              *       *       *
>
>     (c) Disturbs any lawful assembly of persons without lawful authority;
>
>              *       *       *
>
> (2)(a) Disorderly conduct in the second degree is a Class B misdemeanor.

ORS 166.025.

Here, Patterson saw Glass interrupt the candidate forum. Franz Decl. Ex. 108, at 10-11. Patterson testified that the moderator "asked him [Glass] to sit down, and then he just kept talking." *Id.* Patterson knew that the public were not allowed to speak during forum. *Id.* at 12. Patterson testified that he believed Glass's intention was to disrupt the forum. *Id.* at 13-14. Patterson and Gray approached Glass and escorted him out of the forum. *Id.* at 11. Once outside, the officers allowed Glass to go on his way. *Id.* at 21.

As noted, probable cause is an objective standard. Based on the facts known to Patterson at the time of Glass's removal, the Court concludes that Patterson had probable cause to arrest Glass for Disorderly Conduct. The officers' seizure of Glass was therefore reasonable. Defendants are entitled to summary judgment on Glass's claim for unreasonable seizure.

## 2. Excessive Force

Glass alleges that the officers used excessive force when they took him by the arms and led him out of the forum. Glass contends that no force was justified under the circumstances and so any use of force was excessive.

Under the Fourth Amendment, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light

of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citation omitted). Courts "must balance the amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (internal quotation marks and citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

"Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotation marks and citation omitted). However, a defendant can prevail on a motion for summary judgment "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

In this case, Patterson took one of Glass's arms and Gray took the other arm and they escorted him out of the building. Franz. Decl. Ex. 108, at 13. Taylor, who was present but not directly involved, described the officers' tactic as an "escort touch." Franz Decl. Ex. 109, at 8. "They didn't grab him . . . They didn't drag him. They didn't lift him. They didn't—they just touched him by the arm and walked him outside." *Id.*

Viewed in the light most favorable to Glass, the minimal amount of force used to escort him from the building was objectively reasonable under the circumstances. "Courts have consistently held that such a *de minimis* use of force is insufficient to support a claim of excessive force." *Benton v. Legacy Health*, Case No. 3:13-CV-00613-YY, 2017 WL 6345806, at *4 (D. Or. Dec. 12, 2017); *Parker v. City of Los Angeles et al.*, Case No. 2:15-cv-04670-SVW-JEM, 2016 WL 9153765, at *7 (C.D. Cal. June 22, 2016) ("Courts have held that a *de minimis* use of force is insufficient to support a claim of excessive force."). On this record, Defendants are entitled to summary judgment on Glass's excessive force claim.

### C. Sheriff Taylor

Glass's claim against Taylor stems from Taylor's presence at the forum, his position as the Lake County Sheriff, and his failure to intervene in the alleged violation of Glass's rights. Defendants point out that Patterson and Gray were Lakeview police officers and not under Taylor's control or supervision. Deputy Tague's involvement was limited to following and recording the interaction between Glass and the officers outside the senior center. Taylor testified that he only learned that Tague had followed the officers out when he saw the Tague's body camera footage. Franz Decl. Ex. 109, at 8.

It is not necessary for the Court to resolve Taylor's degree of control over Patterson and Gray, however, because the officers did not violate Glass's First or Fourth Amendment rights, as discussed in the preceding sections and Taylor is entitled to summary judgment on Glass's § 1983 claims.

### D. *Monell* Liability

Finally, Glass has brought claims for municipal liability against the Town of Lakeview and Lake County, alleging that they failed to train their officers that "(a) they are not to interfere with

the exercise of First Amendment rights in a public forum, (b) there is no prohibition on write-in candidates speaking at candidate forums, (c) they are not to seize persons in response to their lawful speech conduct, (d) even if ultimately permitted to use force in response to their lawful speech conduct, that force must be reasonable, and (e) they may not threaten any person with negative consequences should they return to Lake County."  FAC ¶¶ 73, 74.

A municipality or other local government body may be liable under § 1983 if the local government subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation.  *Monell*, 436 U.S. at 691-92.  However, a constitutional violation is a necessary element of a claim for municipal liability under *Monell*.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Without the underlying constitutional violation, there can be no municipal liability.  *Id.*  In this case, the Court has determined that Glass's rights were not violated.  Glass cannot, therefore, sustain a claim for municipal liability under § 1983.

## II.    Glass's Motion to Amend the Complaint

On February 3, 2020, while the Motion for Summary Judgment was pending, Glass filed a Motion to Amend the Complaint.  ECF No. 24.  Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleadings with leave of the court and the court should grant leave "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Court should exercise "extreme liberality" in considering motions to amend.  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Courts consider the following factors when determining whether to grant leave to amend: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; and (5) futility of the amendment.  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  "The party

opposing amendment bears the burden of showing prejudice." *Robillard v. Opal Labs, Inc.*, 337 F. Supp.3d 962, 967 (D. Or. 2018) (internal quotation marks and citation omitted).

In this case, the proposed amendments seek to substitute Patterson, Gray, Systma, Havel, and Tague in place of the Doe Defendants. Defendants object that the proposed amendment would be time-barred and therefore futile.

## A. Timeliness

In Oregon, an action under § 1983 is governed by the two-year statute of limitations for personal injury actions, ORS 12.110(1). *See, e.g., Bailey v. Hanson*, 247 F. App'x 889, 889 (9th Cir. 2007) (so holding). Actions under § 1985 are subject to the same statute of limitations. *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 672-74 (9th Cir. 1991).

In this case, the candidate forum occurred on October 19, 2016, and this case was filed exactly two years later, on October 19, 2018. Both the original Complaint and the First Amended Complaint named Doe Defendants in place of the Lakeview police officers who removed Glass from the forum and the Lake County deputies who were also present. Defendants object to the proposed amendment naming Gray, Patterson, Systma, Havel, and Tague in place of those Doe Defendants on the grounds that the amendment does not relate back to the original Complaint.

In federal cases, relation back is generally governed by Federal Rule of Civil Procedure 15(c). However, when "the limitations period derives from state law, Rule 15(c)(1) requires [courts] to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014). The Court must therefore compare the relation back provisions under federal and Oregon law. For federal law, Rule 15(c) provides that:

> An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Relation back therefore requires that "(1) the basic claim must have arisen out of conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Butler*, 766 F.3d at 1202 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).  Additionally, the second and third requirements must have been fulfilled within the 120-day time limit provided by Rule 4(m).  *Id.*

In *Hagen v. Williams*, Civil No. 6:14-cv-00165-MC, 2014 WL 6893708, at *5-6 (D. Or. Dec. 4, 2014), this Court held that naming a Doe defendant is not a "mistake" for purposes of Rule 15 and so an amendment proposing to substitute a named party for a Doe defendant does not relate back to the date of the original complaint under the federal rules.  The Court adheres to its prior holding in the present case.

The Court therefore turns to state law.  Relation back under Oregon law is governed by ORCP 23C, which provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

original pleading, the amendment relates back to the date of the original pleading.
An amendment changing the party against whom a claim is asserted relates back
if the foregoing provision is satisfied and, within the period provided by law for
commencing the action against the party to be brought in by amendment, such
party (1) has received such notice of the institution of the action that the party will
not be prejudiced in maintaining any defense on the merits, and (2) knew or
should have known that, but for a mistake concerning the identity of the proper
party, the action would have been brought against the party brought in by
amendment.

Ore. R. Civ. P. 23C.

Oregon courts have divided ORCP 23C motions into cases of "misnomer" and

"misidentification," depending on which type of mistake the plaintiff has made. *Worthington v.*

*Estate of Davis*, 250 Or. App. 755, 760 (2012). "Misnomer" cases are those in which the

plaintiff "chooses the correct defendant and simply misnames it." *Id.* at 672. In cases of

"misnomer," the first sentence of ORCP 23C applies: "If considering all the allegation of the

original complaint and the summons, an entity could reasonably identify itself as the entity

intended to be sued, a 'misnomer' has occurred, and an amended complaint correctly naming the

defendant will relate back as long as it relates to the same conduct, transaction, or occurrence set

forth or attempted to be set forth in the original pleading." *Id.* (internal quotation marks and

citations omitted, alterations normalized).

"Misidentification", by contrast, "occurs when the plaintiff mistakenly sues a person or

entity other than the one whose conduct allegedly harmed the plaintiff." *Worthington*, 250 Or.

App. at 761. A case of misidentification can only relate back if it satisfies the more stringent

requirements of the second sentence of ORCP 23C. *Id.* However, "[a] plaintiff's lack of

knowledge regarding a defendant's identity is not a 'mistake' for purposes of Or. R. Civ. P. 23,

subd. C." *Clavette v. Sweeney*, 132 F. Supp.2d 864, 876 (D. Or. 2001).

Oregon courts have not decided whether the naming of a "John Doe" defendant qualifies as a misnomer or a misidentification. *Hagen*, 2014 WL 6893708, at *7. This is not, however, a matter of first impression for the Oregon district courts. In *Hagen*, this Court found that the plaintiff's decision to name Doe defendants was a misidentification and subject to the full requirements of ORCP 23C. *Id.* In *Manns v. Lincoln Cnty.* and *Strong v. City of Eugene*, the courts similarly found that the use of Doe defendants was a case of misidentification and subject to Rule 23C requirements of notice and mistake. *Manns v. Lincoln Cnty.*, Case No. 6:17-cv-01120-MK, 2018 WL 7078672, at *6 (D. Or. Dec. 12, 2018); *Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2015 WL 2401395, at *5 (May 19, 2015). "As such, the Oregon standard is analogous to the federal standard," and compels the same outcome. *Strong*, 2015 WL 2401395, at *5; *Hagen*, 2014 WL 6893708, at *7 ("The analysis under ORCP 23 is similar to that under FRCP 15. A Plaintiff's lack of knowledge as to a Defendant's identity is not a mistake.").

Consistent with this Court's previous decision in *Hagen*, the Court concludes that Glass's decision to name Doe Defendants was intentional, based on a lack of knowledge, and was not a mistake. The proposed amendment to name Patterson, Gray, Systma, Havel, and Tague in place of the Doe Defendants does not relate back to the date of the original complaint. As the proposed amendments seek to name those officers after the running of the two-year statute of limitations for claims under §§ 1983 and 1985, the claims would be untimely and the proposed amendment is therefore futile.

### B. Prejudice

Glass filed his Motion to Amend the Complaint three weeks after Defendants filed their Motion for Summary Judgment. The Court notes that depositions were taken for Patterson and Tague on November 20, 2019. Franz Decl. Exs. 108, 110. Glass knew the identities of the

officers by that date at the very latest.  Nevertheless, Glass waited until February 3, 2020, to seek leave to amend.

"Courts are reluctant to grant motions to amend after the parties have finished discovery and filed summary judgment motions."  *Underwood v. Nooth*, Case No. 2:16-cv-01321-PK, 2017 WL 8785575, at *2 (D. Or. Dec. 11, 2017); *see also Precision Seed Cleaners v. Country Mut. Ins. Co.*, No. 03:10-cv-01023- HZ, 2013 WL 12318491, at *3 (D. Or. Jan. 29, 2013) ("[T]he timing of the motion to amend following discovery and with a pending summary judgment motion, weighs heavily against allowing leave.").  The Court concludes that, as in *Underwood* and *Precision Seed Cleaners*, the timing of Glass's motion weighs heavily against him.

As Glass's proposed amendment is both futile and prejudicial to the non-moving party on account of its late filing, the Court DENIES the Motion to Amend.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 20 is GRANTED.  Plaintiff's claims against Defendants Taylor, the Town of Lakeview, and Lake County under 42 U.S.C. § 1983 are DISMISSED.  Plaintiff's Motion to Amend the Complaint, ECF No. 24, is DENIED.

It is so ORDERED and DATED this 10th day of June 2020.


                                        s/Michael J. McShane
                                        MICHAEL McSHANE
                                        United States District Judge